TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-98-00497-CR







Bart Ross, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT


NO. 0975343, HONORABLE MIKE LYNCH, JUDGE PRESIDING








 Bart Ross, appellant, was convicted on two counts of engaging in organized
criminal activity for an aggravated assault committed by appellant and two co-defendants. See
Tex. Penal Code Ann. § 71.02 (West Supp. 2000). On appeal, appellant complains that (1) the
evidence is legally and factually insufficient to support his conviction because his actions did not
come within the statutory requirements of an organized criminal activity, (2) the trial court
improperly refused to submit a requested instruction to the jury, and (3) the trial court erred in
denying his motion for new trial. We will reverse the convictions for organized criminal activity,
render judgment that appellant is guilty of the lesser-included offense of aggravated assault, and
remand the cause to the trial court for a new sentencing hearing.




FACTUAL AND PROCEDURAL BACKGROUND

 About midnight on February 9, 1997, Tonya Hancock left Georgetown with two
friends, heading south on Interstate 35 (I-35) in Hancock's Chevrolet Blazer. The three planned
to drive downtown and spend the rest of the evening on Austin's Sixth Street. Also driving south
on I-35, caravan fashion, were appellant, who was driving his Camaro, and Robin Saunders and
Bryan Ross, who were in Bryan's Chevrolet pickup. (1) Bryan Ross and appellant are brothers. 
Somewhere south of Georgetown, Hancock changed lanes and inadvertently cut off appellant's
Camaro. She quickly switched back into her original lane, gestured an apology, and continued
on her way.

 Apparently angered by her actions, the passenger in the truck "mooned" Hancock,
and obscenities were exchanged between the passengers in the truck and Hancock's passengers. 
The Camaro and the pickup then commenced a high-speed game of cat-and-mouse with Hancock
on the interstate. The truck pulled in front of Hancock, and the Camaro moved to the right of
her. Boxing her in, they worked in tandem to try to steer her into the cement median on the
highway. If Hancock sped up, the other cars pursued her. If she slowed down, they followed
suit. At one point, they slowed so much that Hancock was forced to come to a complete stop in
the left-hand lane of I-35. Getting out of their vehicles, the Ross brothers threw beer bottles or
cans at Hancock's Blazer.

 Frightened by the assault and worried about being rear-ended by other traffic on
the interstate, Hancock drove in reverse and attempted to get around and away from the other two
vehicles. They followed, however, and the chase continued. Finally, Hancock exited I-35 and
turned on to the frontage road of Highway 290. When she came to a red light, she drove across
a grass median to escape her pursuers. On the other side of the median she came to another red
light and was unable to get around the other cars stopped in front of her at the light.

 Appellant, Bryan Ross, and Saunders quickly arrived. They climbed out of their
respective vehicles and approached the Blazer. (2) A beer can was hurled at the passenger-side
window, shattering the glass. The other two passengers in the Blazer managed to lock their
doors, but Hancock was unable to lock the driver's door before one of the assailants opened it. 
The three of them proceeded to beat Hancock, hitting her repeatedly in the face, until they were
challenged by a bystander.

 Appellant climbed into his Camaro and fled. Saunders and Bryan Ross tried to
drive off in the pickup truck, ran a red light, and collided with another car as they left the scene. 
Oddly, they then returned to the scene and tried to blend in with the bystanders gathered around
Hancock's Blazer. Police and an ambulance quickly arrived. Saunders and Bryan Ross were
identified by the witnesses, and police were given the license plate number of the Camaro.

 Hancock was taken to the hospital where she was treated for a broken nose and
facial lacerations. Since the assault she has had impaired breathing in one of her nostrils, which
will require surgery to repair. Two of her teeth were also broken in the assault.

 Appellant, Bryan Ross, and Robin Saunders were each indicted on charges arising
out of the assault on Hancock. They were tried separately. Appellant was charged with two
counts of engaging in organized criminal activity and one count of aggravated assault. (3) Because
the jury convicted appellant of the first two, more serious charges, it did not reach the question
on aggravated assault. Appellant was sentenced to seven-and-a-half years' imprisonment for each
count, with the sentences to be served concurrently.


DISCUSSION

Organized Criminal Activity 

 In his first and second issues on appeal, appellant challenges the legal and factual
sufficiency of the evidence supporting his convictions for engaging in organized criminal activity. 
In a legal sufficiency challenge, the standard of review is well settled. The question is whether,
after viewing all the evidence in the light most favorable to the verdict, any rational trier of fact
could have found the essential elements of the offense beyond a reasonable doubt. See Jackson
v. Virginia, 443 U.S. 307, 319 (1979); Staley v. State, 887 S.W.2d 885, 888 (Tex. Crim. App.
1994). Any inconsistencies in the evidence should be resolved in favor of the verdict. See
Moreno v. State, 775 S.W.2d 866, 867 (Tex. Crim. App. 1988).

 A person commits the crime of engaging in organized criminal activity if, "with
the intent to establish, maintain, or participate in a combination . . . , he commits or conspires
to commit one or more [enumerated offenses]." Tex. Penal Code Ann. § 71.02(a) (West Supp.
2000). Among the listed offenses is aggravated assault, the lesser-included offense with which
appellant was charged. See id. § 71.02(a)(1). A "combination" is defined as "three or more
persons who collaborate in carrying on criminal activities." Id. § 71.01(a) (West Supp. 2000). 

 The court of criminal appeals recently held that the phrase "carrying on criminal
activities" cannot be understood to include an agreement to jointly commit a single criminal act. 
See Nguyen v. State, 1 S.W.3d 694, 697 (Tex. Crim. App. 1999). Rather, the statute includes
an element of intended continuity, and the State must prove that "the appellant intended to
'establish, maintain, or participate in' a group of three or more, in which the members intend to
work together in a continuing course of criminal activities." Id.

 In Nguyen the defendant was convicted of engaging in organized criminal activity
and murder. Nguyen was dining with friends when men at another table directed lewd comments
toward a woman in his party. See Nguyen v. State, 977 S.W.2d 450, 452 (Tex. App.--Austin
1998), aff'd, 1 S.W.3d 694 (Tex. Crim. App. 1999). After a brief confrontation in the restaurant,
Nguyen and his friends were asked to leave. See id. Agreeing amongst themselves to return and
fight, they went to Nguyen's apartment, retrieved a gun, and returned to the restaurant. See id. 
From the car, Nguyen shot at the other group as they left the restaurant, killing the victim. See
id. Reversing Nguyen's organized-crime conviction, this Court held that "[a]ll of the evidence
here . . . indicates that the murder was committed with intent and agreement to retaliate through
the commission of a single offense; no evidence indicates an intent to establish, maintain or
participate in a group that would work together in a continuing course of criminal activities." Id.
at 456 (emphasis added).

 The case before us presents a slight twist on the issue involved in Nguyen. Instead
of one offense, appellant and his cohorts committed a series of assaults on Hancock while driving
their vehicles down I-35. (4) The incident culminated in the beating of Hancock, and the State
hinged its aggravated assault charge on that final attack. The State urges that this chain of assaults
constituted the "continuing course of criminal activities" required to prove that appellant
participated in a combination and that Nguyen does not apply because that case involved only one
offense.

 We do not find Nguyen so easily distinguishable. In Nguyen we wrote, "[t]he
legislative history of the statute . . . indicates that a 'combination' is more than a mere conspiracy
or agreement to commit a single crime or engage in a single criminal episode." 977 S.W.2d at
455. Thus, even when a defendant commits a series of offenses, the State still must prove that
the defendant acted with the required specific intent. That is, the State must show that the
defendant intended to "'establish, maintain, or participate in' a group of three or more, in which
the members intend to work together in a continuing course of criminal activities." Nguyen, 1
S.W.3d at 697.

 A case-specific inquiry is required to determine whether a series of offenses
committed by the same group indicates that a combination existed. In appropriate circumstances,
the commission by the same group of more than one criminal act can, by itself, give rise to a
reasonable inference of an intent to engage in a continuing course of criminal activities. If, for
example, several people join together to commit a burglary one night, then commit another
burglary a week later, an inference of continuity might be raised.

 In the present case, however, the evidence does not show that appellant intended
to participate in a group that would work together in a continuing course of criminal activities. 
Rather, much as in Nguyen, the case presents a spontaneous, retaliatory series of actions that were
all part of the same criminal episode. Angry that Hancock cut him off in traffic, appellant and
the passengers in the other vehicle intended a course of harassing conduct, which ultimately
resulted in a physical assault. That they ended up committing a series of offenses as the
harassment unfolded does not alter their apparent intent to commit just one assault. As in Nguyen,
the State has not pointed to any evidence in the record to support a finding that there was an intent
to form a combination that would carry on a continuing course of criminal activities beyond the
single criminal episode involving the attack on Hancock. Under these unique circumstances,
therefore, even the commission of more than one offense by appellant and his co-defendants does
not give rise to a reasonable inference of an agreement as to continuity. Because the State has not
proved the intent element of engaging in organized criminal activity, we hold that the evidence
is legally insufficient to support his convictions of that crime.


 Nonetheless, the court of criminal appeals recently stated that


a court of appeals may reform a judgment of conviction to reflect conviction of a
lesser included offense . . . if (1) the court finds that the evidence is insufficient
to support conviction of the charged offense but sufficient to support conviction of
the lesser included offense and (2) either the jury was instructed on the lesser
included offense . . . or one of the parties asked for but was denied such an
instruction.



Collier v. State, 999 S.W.2d 779, 782 (Tex. Crim. App. 1999) (plurality opinion). In the present
case, the jury was instructed on the offense of aggravated assault in conjunction with two charges
of engaging in organized criminal activity. The court's charge also asked separately whether
appellant committed the offense of aggravated assault, but the jury did not reach that question in
its deliberations because it convicted on the greater offenses of engaging in organized criminal
activity. By convicting appellant of the greater offense, the jury necessarily found that he
committed the lesser offense of aggravated assault. See Tex. Penal Code Ann. § 71.02(a).

 The State has offered ample evidence that appellant intentionally, knowingly, or
recklessly threatened or caused bodily injury to Hancock, and that he used or exhibited a deadly
weapon during the commission of the assault. See Tex. Penal Code Ann. §§ 22.01, 22.02 (West
1994 & Supp. 2000). We therefore hold that the evidence is both legally and factually sufficient
to support a conviction of aggravated assault.

 In his third issue on appeal, appellant complains that the jury was not instructed on
the judicial construction of the term "collaborate," as that term is used in the statutory definition
of "combination." See id. at § 71.01. Because we have reversed his convictions for engaging
in organized criminal activity, this issue is moot and we need not address it.

Motion for New Trial

 In his final issue on appeal, appellant urges that the trial court abused its discretion
in refusing to grant his motion for new trial. In support of his motion, appellant claimed that
material testimony from his two co-defendants was newly available because Saunders and Bryan
Ross were, at the time of trial, awaiting sentencing and would have asserted their fifth amendment
right against self-incrimination if they had been called to the stand; at the time of the motion for
new trial, however, they had already been sentenced and thus would have been willing to testify
at a second trial.

 The requirements for obtaining a new trial based on newly available evidence are:


1. The newly discovered evidence was unknown to the movant at the time of his
trial;

2. The movant's failure to discover the evidence was not due to his want of
diligence;

3. The materiality of the evidence is such as would probably bring about a
different result in another trial; and

4. The evidence is admissible, and not merely cumulative, corroborative,
collateral or impeaching.



Drew v. State, 743 S.W.2d 207, 226 (Tex. Crim. App. 1987); see also Jones v. State, 711
S.W.2d 35, 36-37 (Tex. Crim. App. 1986); Oestrick v. State, 939 S.W.2d 232, 236 (Tex.
App.--Austin 1997, pet. ref'd). Since all four elements must be shown to obtain a new trial, we
will uphold the trial court's denial of appellant's motion if any element is disproved. (5)

 To satisfy the third element of this test, the trial court must determine that the new
evidence is "probably true," meaning "the whole record presents no good cause to doubt the
credibility of the witness whose testimony constitutes new evidence." See Jones, 711 S.W.2d at
37 n.4.

 At the hearing on appellant's motion for new trial, Bryan Ross and Robin Saunders
offered their version of the events that transpired on the night in question. Bryan testified that
appellant and Hancock were merely playing games on the highway during what the trial witnesses
had characterized as a chase. Bryan said that Hancock was never forced to stop her car, but that
she stopped willingly. He claims she could have gotten away at any time and that all parties were
only "playing around." He said that when he and Saunders approached Hancock's car, one of
Hancock's passengers hit Saunders. To retaliate, Bryan reached into the car to hit the passenger
in the back seat; any witness who said Bryan had hit Hancock repeatedly was lying. Bryan
testified that he never saw appellant strike Hancock. Saunders also testified at the hearing that
Hancock had not been forced from the road and that she did not recall seeing appellant hit
Hancock.

 Because the testimony of appellant's co-defendants directly contradicted that of the
disinterested eye-witnesses who testified at trial, it appears that the trial court doubted the
credibility of Saunders and Bryan Ross and concluded that the new evidence offered would
probably not bring about a different result in another trial. The trial court would have been well
within its discretion to determine that the testimony offered by appellant's co-defendants in the
hearing on his motion for new trial was not "probably true." We find no error in the trial court's
refusal to grant appellant a new trial.


CONCLUSION

 Finding no abuse of discretion, we affirm the trial court's denial of appellant's
motion for new trial. We further hold that the State has failed to prove an essential element of
the offense of engaging in organized criminal activity: that appellant participated in a combination
formed to engage in a continuing course of criminal activity. Accordingly, we reverse appellant's
convictions on those charges and render judgment acquitting him thereof. However, we hold that
the evidence is legally and factually sufficient to support a conviction for the lesser-included
offense of aggravated assault; we render judgment convicting appellant on that charge, and we
remand the cause for a new sentencing hearing.



 
 J. Woodfin Jones, Justice

Before Justices Jones, Kidd and Patterson

Reversed and Rendered in Part; Reversed and Remanded in Part

Filed: January 6, 2000

Publish
1. It is not clear from the testimony whether it was Saunders or Bryan Ross who was
driving the pickup. The two may have switched positions when the truck stopped at various
points.
2. One witness reported that she saw two people emerge from the Camaro, but all of the
other witnesses at trial reported that appellant was traveling alone.
3. One organized crime count accused appellant of causing serious bodily harm; the other
count accused him of threatening imminent bodily harm by use or exhibition of a deadly weapon
(a motor vehicle).
4. Although evidence of more than a single action or offense will often be necessary to
show participation in a combination, the State need only prove one criminal offense to establish
the offense of engaging in organized criminal activity. See Nguyen, 1 S.W.3d at 697.
5. Strong arguments can be made that the new evidence was known to appellant at the time
of trial, and that since Bryan Ross and Saunders were not called to the stand, appellant's failure
to elicit their testimony was due to a want of diligence. We will not address these points,
however, because it is even more clear that appellant cannot satisfy the third prong of this test.



ed. (5)

 To satisfy the third element of this test, the trial court must determine that the new
evidence is "probably true," meaning "the whole record presents no good cause to doubt the
credibility of the witness whose testimony constitutes new evidence." See Jones, 711 S.W.2d at
37 n.4.

 At the hearing on appellant's motion for new trial, Bryan Ross and Robin Saunders
offered their version of the events that transpired on the night in question. Bryan testified that
appellant and Hancock were merely playing games on the highway during what the trial witnesses
had characterized as a chase. Bryan said that Hancock was never forced to stop her car, but that
she stopped willingly. He claims she could have gotten away at any time and that all parties were
only "playing around." He said that when he and Saunders approached Hancock's car, one of
Hancock's passengers hit Saunders. To retaliate, Bryan reached into the car to hit the passenger
in the back seat; any witness who said Bryan had hit Hancock repeatedly was lying. Bryan
testified that he never saw appellant strike Hancock. Saunders also testified at the hearing that
Hancock had not been forced from the road and that she did not recall seeing appellant hit
Hancock.

 Because the testimony of appellant's co-defendants directly contradicted that of the
disinterested eye-witnesses who testified at trial, it appears that the trial court doubted the
credibility of Saunders and Bryan Ross and concluded that the new evidence offered would
probably n